Geishaker v. Pancoast.

ADELAIDE V. GEISHAKER and husband, and ALFARETTA E. WHITE and husband

v.

DAVID J. PANCOAST, GLADYS W. FILLEBROWN and husband, ROY ALTON FAY and LOUISE FAY.

[Decided April 27th, 1898. Filed January 4th, 1899.]

1. One purchasing at an execution sale does not acquire an interest to which he knew one not an execution defendant was equitably entitled.

2. A *lis pendens* merely disclosing an interest held by complainants will not give a purchaser constructive notice of an interest of another disclosed by complainants' bill, which is referred to by the *lis pendens*.

3. Defendants purchased under foreclosure, knowing that complainants were equitably entitled to a certain undivided interest in the land. When the mortgage was executed the mortgagee had no notice of complainants' interest.— *Held*, that complainants were entitled to an order of sale permitting them to redeem their interest in the land by paying whatever deficiency there might be due on the mortgage after sale of the interest which the mortgagor owned.

4. The owner of an interest in land executed a mortgage that was valid against complainants because the mortgagee had no notice that they were equitably entitled to an undivided interest.—*Held,* that defendants, purchasing the mortgagor's interest in the land under execution, knowing of complainants' rights, took the land subject to complainants' equitable right to have the mortgagor's interest first sold to satisfy the mortgage.

Heard on bill, answer and proofs.

*Mr. John J. Crandall,* for the complainants.

*Mr. David J. Pancoast,* for the defendants.

Pitney, V. C.

The bill in this cause prays no specific relief, but it was answered, and defendants went to hearing without objection, and I shall therefore assume that its object is to establish the equitable title of the two female complainants to an equal undivided one-seventh each in a lot of land in the village of Hammonton, in the county of Atlantic, in this state, the legal title of which at one time stood in their brother, Thornton W. Fay.

These lands formerly belonged to one Cyrus J. Fay (the father of the female complainants), who died seized of the same intestate, leaving nine children, who became tenants thereof in common. At a sale under partition proceedings instituted by another brother, William H. Fay, the premises were bought by Thornton W. Fay for the benefit of himself and six of his brothers and sisters, including the two complainants and George W. Fay, the father of the defendants Mrs. Fillebrown and Roy Alton Fay. The six brothers and sisters released to Thornton their share in the proceeds of the sale, with the result that a trust arose in their favor of one-seventh each. See *Fay* v. *Fay, 5 Dick. Ch. Rep. 260,* in which case the present female defendants were complainants in a suit commenced by bill filed March 8th, 1892, and their right was finally established and a decree made in their favor declaring that, as representatives of their deceased father, George W. Fay, they were each entitled to an equal undivided one-seventh part of the premises in question in this suit. *Fay* v. *Fay, 29 Atl. Rep. 356.*

Geishaker *v.* Pancoast.

The fact that the female complainants herein were two of the six brothers and sisters who released to their brother Thornton their share in the proceeds of the sale on that partition proceeding, and that they had never been paid by him for the same, was proven in this cause, and by such proof their equitable interest in the land in question was established.

The defence is that, pending the suit brought by the female defendants, which is reported in its preliminary stage in *5 Dick. Ch. Rep. 260*, and in its later stage in *29 Atl. Rep. 356*, Thornton W. Fay, having, apparently, the title to the premises, free and clear of any trusts or encumbrances, mortgaged the same to one Stout for $500; that, after giving that mortgage, the decree establishing the right of the female defendants to an equal undivided one-seventh part was made and costs recovered against Thornton Fay, and an ·execution issued out of this court to enforce payment of those costs, and the premises were brought to sale under such execution and purchased in the interest of the female defendants herein by the defendant Pancoast, who was their solicitor and counsel; that, subsequently, foreclosure proceedings were commenced by Stout upon his mortgage, and the premises were brought to a sale, and the defendant Pancoast purchased them at that sale. He then conveyed the same to the female defendants and took back from them a mortgage to secure him for the money which he had paid and expended and for his services in their behalf.

The allegation of the defence is that the mortgage from Thornton Fay to Stout conveyed a fee-simple in the premises, free from complainants' equitable estate, but subject to redemption, and that a purchaser under that mortgage obtained a clear title, though he himself had notice of complainants' title.

The position of the complainants is that the defendants, and each of them, had full notice of the complainants' equity in the premises; that such notice arose from the examination of the witnesses in the suit of the defendants against Thornton, and that special notice was given to Mr. Pancoast of their equitable rights before he purchased at either of the sheriff's sales.

I am satisfied that the defendants did have actual notice of

the female complainants' equitable rights. in these premises, and the result is that their title, under the execution for costs, must be confined to the interest of Thornton W. Fay in the premises. *Harney* v. *Bank, 7 Dick. Ch. Rep. 697.*

With regard to the title under the mortgage, it was not disputed by the complainants but that Stout was a *bona fide* mortgagee for the sum mentioned in his mortgage—$500; that is to say, he advanced that much money in reliance upon Thornton's apparent title and had no actual notice of complainants' rights. But complainants claim that he had constructive notice of their rights by virtue of a notice of *lis pendens* filed by the present defendants in pursuance of the statute (*Gen. Stat. p. 402 § 161*), in their suit in the county of Atlantic, on the 9th of March, 1892, the day after their bill was filed in this court.

That document says nothing about any claim to the land, except that of the complainants in that suit.    It says:

"That a suit has been commenced and is pending in the court of chancery, and that the object of it is to have the title to an undivided one-ninth part of the lands and premises declared to be in the complainants, and to require a conveyance to be made of the same by the defendant, free and clear of all encumbrance put thereon by him."  .

It does not state the ground upon which that claim is founded. But the complainants contend that it was the duty of a proposed mortgagee to examine the original bill referred to in that notice, and see what that stated.    That proposition may be maintainable so far as relates to any right on the part of the present defendants to an undivided one-ninth interest, afterwards declared to be a one-seventh interest.    Undoubtedly the mortgage of Thornton Fay to Stout was inefficient as to an undivided one-ninth of the premises vested in equity in the present defendants. But I am unable to see upon what principle other parties interested in those premises had any legal or equitable right to expect that the proposed mortgagee or other purchaser should look at the original bill to which the *lis pendens* referred.    It may well be that Mr. Stout, if he examined the notice of *lis pendens,* of which there is no proof, was willing to loan $500 on the eight

equal undivided one-ninth shares of the premises in question, and was indifferent with regard to the one-ninth covered by the *lis pendens;* and I do not see that there was anything in the notice to put him upon inquiry as to any other share than the one equal undivided part claimed by the complainants therein, or as to any other outstanding interest in the property.

But if we look at the bill of complaint referred to in the notice, all that we find in it is a statement that Cyrus Fay, the ancestor, died seized of the premises, and that by virtue of partition proceedings by one of his heirs the premises were sold, and that Thornton Fay purchased, and that it was agreed by and between him and his brothers and sisters, the other heirs-at-law of their father, without naming any of them, except George W. Fay, father of the complainants therein, the defendants herein, and William H. Fay, the complainant in partition, that he should purchase the same in his own name, but in the interest and with the joint funds of the other heirs, excepting William H. Fay, and hold the title for the equal benefit of those concerned till the same should be more advantageously disposed of by the common consent of all those concerned. It further says that George W. Fay, the father of the complainants in that suit, the defendants in this, executed a release for his one-ninth part of the proceeds, and, as the result of that, Thornton held one-ninth part in trust for him. It does not say whether the other heirs executed any release, or whether they had or had not been settled with.

Now, it seems to me that it may well be considered doubtful whether that statement, if actually seen by the mortgagee, would have put him upon inquiry as to the right of the complainants, who were not parties to that suit, and in whose behalf no claim was thereby made. But I do not find it necessary to decide that question, since I am clearly of opinion that upon general principles the notice in question, and the suit to which it refers, can operate only in favor of the party complainant in that suit. I have examined the precedents with some care, and am unable to find a shred of authority for the contrary contention of the complainants in that behalf.

Geishaker *v.* Pancoast.

It must be remembered that the statutory notice in question is not an extension or amplification of the operation of the maxim "*pendente lite nihil innovatur.*" It is not declared by the statute to act as notice of anything to anybody. It acquires from the statute none of the qualities of the record of a title deed. Nor is it a part of the chain of title of any person claiming through any of the defendants in the suit. On the contrary, its object is to act as a limitation and restraint upon the operation and effect of the maxim in question by way of ameliorating its admitted hardship as originally applied, and the maxim itself is not founded upon the idea of *notice*, but of the necessity for the efficient administration of justice that the result of a suit shall bind all parties who acquire an interest in its subject-matter pending its progress. *Haughwout* v. *Murphy,* *7 C. E. Gr. 531* (at *p. 544*) (*Court of Errors and Appeals, per Mr. Justice Depue*), and cases there cited. And see a fuller examination of the authorities in *Turner* v. *Haupt, 8 Dick. Ch. Rep. 526* (at *p. 553*) *et seq.*

The maxim in question, in my judgment, inures to the benefit of the party complainant for the purposes of the particular suit, and for the benefit of no other person and for no other purpose.

Not only is there, so far as I can find, no authority for the notion that any person other than the complainant can have its benefit by way of implied notice, but there is authority to the contrary, namely, *Bellamy* v. *Sabine, 1 De G. & J. 566.* The facts in that case are quite complicated, but may be abbreviated for present purposes thus : A brought suit in equity against B and C in respect to certain lands, and the pleadings therein showed that, in addition to the particular equity set up by A against B and C, B had an equity against C, his co-defendant, in respect to the same lands. Pending that suit, C, who held the legal title, mortgaged the premises to D. In a subsequent suit, B enforced his equity against C and claimed that D was bound by it because it had been set out in the pleadings in the previous suit, pending which D took his mortgage. This claim, after elaborate argument, was disallowed by Lord-Chancellor Cranworth and Lord-Justices Knight-Bruce and Turner. Lord

Cranworth (*1 De G. & J. 581*) says: "If the doctrine really rested on the ground of implied notice, the consequence might be that the person affected by notice is affected by notice of everything reasonably deducible from or appearing in the suit, and this might warrant the order now complained of. I am, however, of opinion that the pendency of Francis Bellamy's suit cannot be treated as having amounted to notice of the equitable rights of John Bellamy against his co-defendant Sabine." And Lord-Justice Knight-Bruce (at *p. 582*) says: "In that suit [of 1830], the only suit which, in or before 1833, existed, Francis Bellamy was the sole plaintiff, and neither of the mortgagees of 1833 was a defendant; consequently, in my opinion, there was not a *lis pendens* created by it between John Bellamy and Thomas Sabine, who were both defendants in the cause, or between John Bellamy and the mortgagees of 1833; and as those mortgagees respectively had, neither in nor before the year 1833, actual notice, so, in my judgment, as between them and John Bellamy, neither in nor before that year had either of them constructive notice of the suit of 1830. John Bellamy, in and before the year 1833, stood, so far as any litigation was concerned, on the defensive merely. John Bellamy was not, in any sense, an actor in any litigation before the year 1835." To the same effect is the judgment of Lord-Justice Turner.

The argument from a case where an equity was set out, but not attempted to be enforced, between two defendants, to a case where the equity is set out in favor of a person not a party is *a fortiori*.

The result is that, on the case made before me, Stout's mortgage, and the title under it, is good as to the undivided shares of the complainants.

But then another equitable rule intervenes to limit the effect of the defendants' title under that mortgage. We have already seen that they, the defendants herein, had notice of the complainants' equity before they purchased. Hence, they can claim under that mortgage no more than what they actually paid for principal, interest and costs on the Stout decree, the familiar rule being that they are in equity entitled to indemnity and no more.

Geishaker v. Pancoast.

*Haughwout* v. *Murphy, 7 C. E. Gr. 548, 549,* and cases cited in argument of counsel at *p. 535 et seq.*

Then another equity arises in favor of the complainants, which I think is superior to that of the defendants, and that is this: although Stout got a title superior to that of the complainants, yet he took it subject to the equity of the complainants to have the mortgage enforced, in the first place, against Thornton's undivided share or interest, whatever it may be, in the premises; and this equity is also superior to the title of the defendants under the sale of Thornton's interest, by virtue of execution issued in the suit of *Fay* v. *Fay,* on the familiar principle that the complainants' rights are first in point of time.

The result is that the complainants are entitled, in the first place, to have the share or interest of Thornton Fay sold first to repay the defendants the amount paid by them on the decree on the Stout mortgage; and they are entitled to redeem their two undivided shares by paying the balance remaining due thereon after the application of Thornton's share as aforesaid.

If asked for, the complainants are entitled to an account of the rents and profits of the premises.

For present purposes, I treat the share or interest of Thornton in the premises, which must be applied to the payment of the Stout mortgage and of the defendants' execution for costs, as uncertain. It is true that the complainants' bill alleges that Thornton had conveyed parts of the premises purchased by him under the partition proceedings, not here involved, to three of the seven persons interested, not parties to this suit, in payment *in specie* for their equitable interests in the premises here in question, whereby Thornton's equitable interest in the premises was advanced from one-seventh to four-sevenths. But the persons whose interests were so alleged to be extinguished are not parties to this suit, and no proof was offered upon that subject, and, if there had been, their absence would have rendered it inefficient for purposes of adjudication herein. The uncertainty as to the extent of Thornton's equitable interest will not, as I think at present, affect the working out of the decree which I propose to advise. I will, however, hear any suggestions counsel may have to make upon that point.